UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  EDWIN O. CRESPO, | : | Case No. 14-11629REF |
| Debtor | : | Chapter 13 |

-------------------------------------------

| | | |
|---|---|---|
| EDWIN O. CRESPO, | : | Adv. No. 14-326 |
| Plaintiff | : | |
| vs. | : | |
| ABIJAH TAFARI IMMANUEL and | : | |
| LEHIGH COUNTY TAX CLAIM BUR., | : | |
| Defendants | : | |

# **ORDER**

AND NOW, this 18 day of May, 2016, for the reasons set forth in the accompanying Memorandum Opinion dated and filed today, IT IS HEREBY ORDERED that JUDGMENT ON THE COMPLAINT IS ENTERED IN FAVOR OF DEFENDANT IMMANUEL AND AGAINST PLAINTIFF DEBTOR.

IT IS FURTHER ORDERED that <u>sua sponte</u> relief from the automatic stay is HEREBY GRANTED, effective May 23, 2016, to enable Debtor and Immanuel to participate, if they so choose, in an appeal of the state court decision.

BY THE COURT

_[signature]_
RICHARD E. FEHLING
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: EDWIN O. CRESPO, | : | Case No. 14-11629REF |
| Debtor | : | Chapter 13 |

------------------------------------------

| | | |
|---|---|---|
| EDWIN O. CRESPO, | : | Adv. No. 14-326 |
| Plaintiff | : | |
| vs. | : | |
| ABIJAH TAFARI IMMANUEL and | : | |
| LEHIGH COUNTY TAX CLAIM | : | |
| BUREAU, | : | |
| Defendants | : | |

# MEMORANDUM OPINION

# I. INTRODUCTION

## A. Procedural History

Plaintiff/Debtor, Edwin O. Crespo, filed a chapter 13 under petition on March 4, 2014, and on July 20, 2014, he filed the complaint initiating this adversary proceeding under 11 U.S.C. §548(a)(1)(B)(i). Debtor seeks to avoid the pre-petition tax upset sale of his property to Defendant, Abijah Tafari Immanuel. Later in 2014, Immanuel moved to dismiss the complaint, which I denied. At the trial in this case in 2015, the parties presented a substantial Stipulation of Facts and I entered a briefing order. The parties have now filed their post-trial briefs and the

1

matter is ready for disposition. For the reasons that follow, I find that the tax upset sale is not avoidable under section 548(a)(1)(B)(i) because Immanuel paid what must be deemed to be reasonably equivalent value for the property. I will therefore enter judgment on the complaint in favor of Immanuel and against Debtor.

## B. Factual Background

My summary of facts is simple and is based on the parties' Stipulation of Facts.[1] Debtor and his wife, Angela Crespo, reside at 715 N. Kiowa Street, Allentown, PA ("the Property"), and are the record owners of the Property. They had purchased the Property for $175,000.[2] At the time of the tax upset sale, no mortgage liens existed against the Property and none exist now.

Debtor and his wife became delinquent on their property tax obligations in the 2011 tax year. Sometime in August 2012, Debtor and the Lehigh County Tax Claim Bureau (the "Tax Claim Bureau") entered into an Agreement To Stay Tax Sale. The Agreement required four installment payments. Debtor

---

[1] Counsel presented me with the Stipulation of Facts at the beginning of the trial. This Stipulation was never formally admitted into evidence because both counsel agreed that they would docket a Bates-stamped version of the Stipulation of Facts. Neither a Bates-stamped version of the Stipulation, nor the version of the Stipulation that was presented to me during the trial, were ever docketed by counsel. I therefore now admit into evidence, and make part of the record, the version of the Stipulation of Facts that was presented to me and agreed to by both parties during the trial.

[2] The parties' Stipulation of Facts does not include the date that Debtor and his wife purchased the Property, which date is irrelevant in this proceeding.

2

defaulted on the Agreement when he missed the installment payment that had been due on January 30, 2013. On February 12, 2013, the Tax Claim Bureau sent a delinquency notice to Debtor by certified mail. This delinquency notice was returned to the Bureau as unclaimed. Jack Anthus, an agent of the Tax Claim Bureau, attempted to serve Debtor and his wife personally with tax sale notices once on July 16, 2013, and twice on July 17, 2013, but his attempts were unsuccessful. On September 10, 2013, the Tax Claim Bureau filed and presented to the Court of Common Pleas of Lehigh County (the "state court") a Petition To Waive Requirement of Personal Notice of Upset Sale on Owner or Occupant ("Petition To Waive Notice"). Neither Debtor, his wife, nor any other individual whose rights would be affected by a waiver of notice, received notice of the Tax Claim Bureau's intent to present the Petition To Waive Notice. The state court granted the Tax Claim Bureau's Petition To Waive Notice on September 10, 2013.

On or about September 11, 2013, the Tax Claim Bureau exposed the Property to a tax upset sale. Immanuel, who is engaged in the business of purchasing, selling, and leasing real estate and has substantial experience acquiring real estate at tax and foreclosure sales, was the only party to bid on the Property at the tax upset sale. Immanuel bid $27,000 for the Property and was the successful bidder.

On October 31, 2013, Debtor and his wife filed their Petition To Set Aside Tax Sale with the state court in which they alleged that the tax sale should be set aside because of notice irregularities and due process violations.[3] Immanuel filed an Answer with New Matter to the Petition To Set Aside on or about October 28, 2013. On February 4, 2014, the state court rejected the notice and due process arguments raised by Debtor and his wife and denied the Petition To Set Aside Tax Sale. The state court found that the statutory notice and due process requirements were met and that Debtor and his wife received actual notice of the tax upset sale.

Debtor then filed this Chapter 13 bankruptcy petition on March 4, 2014, two days before the appeal period for the state court's February 4, 2014 order would have expired. On July 20, 2014, Debtor filed this adversary complaint seeking to avoid the pre-bankruptcy petition tax upset sale as a fraudulent transfer under 11 U.S.C. §548(a)(1)(B)(i).[4]

---

[3]     A copy of the Petition To Set Aside Tax Sale is attached as Exhibit 1 to the Stipulation of Facts filed by the parties in this proceeding. It is captioned "Objections and Exceptions," but is referred to by the state court and the parties in this proceeding as a Petition To Set Aside Tax Sale.

[4]     The adversary complaint filed by Debtor also sought to avoid the pre-petition tax upset sale under 11 U.S.C. §544(a)(1) and (3). I have assumed that Debtor abandoned these causes of action because he does not address them in his brief.

# II. **DISCUSSION**

## A. **The Rooker-Feldman doctrine does not divest me of jurisdiction over Debtor's effort to set aside the pre-petition tax upset sale under 11 U.S.C. §548(a)(1)(B)(i).**

The Rooker-Feldman doctrine is a narrow doctrine that strips a federal court of subject matter jurisdiction to decide a matter that was already decided by a state court. In re Razzi, 533 B.R. 469, 474 (Bankr. E.D. Pa. 2015).

> The doctrine is rooted in the statutory propositions that federal district courts are courts of original, not appellate, jurisdiction and that the United States Supreme Court is the only federal court possessing jurisdiction to review final judgments of a state's highest court.

Id. The Rooker-Feldman doctrine applies when the following four part test is met:

> (1) [T]he federal plaintiff lost in state court;
> (2) the federal plaintiff complains of injuries caused by the state-court judgments;
> (3) those judgments were rendered before the federal suit was filed; and,
> (4) the federal plaintiff is inviting the federal court to review and reject the state-court judgments.

Id., quoting Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010).

Applying this four-part test to the case before me, the first and third prongs are clearly satisfied. Debtor lost in state court and the state court judgment was rendered before this adversary complaint was filed. I find, however, that the

5

second prong of the four part test, i.e., whether Debtor is complaining of injuries caused by the state court judgment, cannot be satisfied in this case. As Chief Judge Frank explained in Razzi, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." Razzi, 533 B.R. at 476-77, quoting McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007). Because the injury complained of by Debtor in this case, that the Property was sold at a tax upset sale for less than reasonably equivalent value, existed prior in time to the entry of the state court proceeding initiated by Debtor to set aside the tax sale, the injury could not have been caused by the state court proceeding. For this reason, the third prong of the Rooker-Feldman test cannot be satisfied and the Rooker-Feldman doctrine does not apply to this case. I therefore retain subject matter jurisdiction over this proceeding.[5]

---

[5]    I also find that the fourth prong of the Rooker-Feldman test has not been met in this case. Debtor is not inviting me to review and reject the state court judgment. Instead, he is asking me to determine that the tax upset sale should be avoided under 11 U.S.C. §548(a)(1)(B)(i) because less than reasonably equivalent value was received for the Property, a claim that was not, and could not have been, raised in the state court proceeding. See discussion, infra, at pp. 7-8.

6

## B. Debtor's claim under 11 U.S.C. §548(a)(1)(B)(i) is not barred by the doctrine of res judicata (also known as claim preclusion).

The doctrine of res judicata, also known as claim preclusion, precludes parties from relitigating claims that were litigated, or could have been raised, in a prior action based on the same cause of action. Turner v. Crawford Square Apartments III, L.P., 449 F3d 542, 548 (3d Cir. 2006).

> For the doctrine of res judicata to prevail, Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.

Id. If these elements are satisfied, a final judgment in the prior case will preclude the parties from relitigating the claim in a subsequent case. Id.

Although the first, third and fourth elements of the res judicata test are met because the thing sued upon, the parties to the state court action, and the capacity in which they are acting are the same, the second element is not and cannot be satisfied. The cause of action before the state court is not identical to the cause of action before me. The cause of action before the state court was based on Debtor's claim that the tax upset sale should be set aside pursuant to the Pennsylvania Real Estate Tax Sale Law, 72 P.S. §§ 5860.101 et seq. (the "Pa. Tax Sale Law"). Debtor and his wife had alleged and argued that (a) certain provisions

7

of the Pa. Tax Sale Law, which authorized tax sales were not followed and (b) the sale violated their due process rights.

The cause of action before me, on the other hand, involves a claim that the tax upset sale should be avoided as a fraudulent transfer under 11 U.S.C. §548(a)(1)(B)(i) because Immanuel allegedly did not purchase the Property for reasonably equivalent value. This claim was not raised in the state court proceeding and is therefore not identical to the cause of action litigated in the state court proceeding. Furthermore, it could not have been raised in the state court proceeding because the Pa. Tax Sales Law that authorized the filing of a petition to set aside tax sales strictly limits the issues that may be raised by the taxpayer. The only authorized action must address "whether the Bureau complied with the procedures delineated by the legislature to bring a delinquent tax property to a public sale and the return and confirmation thereof." Appeal of Yardley, 646 A.2d 751, 755 (Pa. Commw. Ct. 1994); see also Dommel Properties, LLC v. Jonestown Bank and Trust Co., Civil Action No. 1:11-cv-2316, 2013 WL 1149265, at *7 (M.D. Pa. March 19, 2013); 72 P.S. §860.607(d). Because the claim raised by Debtor in this action, namely, a claim to set aside the tax upset sale as a fraudulent transfer because the price paid by Immanuel did not constitute reasonably equivalent value, was not and could not have been raised in the state court petition

to set aside tax sale proceeding, the action before me is not barred by the doctrine of res judicata. Turner, 449 F.3d at 548.

## C. Abstention is not warranted in this case.

A bankruptcy court must abstain from hearing a proceeding under 28 U.S.C. §1334(c)(2) when the following requirements are met:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under Title 11, but does not "arise under" Title 11 and does not "arise in" a case under Title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

Best v. Galloway (In re Best), 417 B.R. 259, 271 (Bankr. E.D. Pa. 2009), quoting Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006).

The first two requirements for mandatory abstention cannot be met in this case. The proceeding in this case is not based on a state law claim or cause of action, but instead is based on 11 U.S.C. §548(a)(1)(B)(i), which "arises under" Title 11. Mandatory abstention, therefore is not required.

I also conclude that permissive abstention under 28 U.S.C. §1334(c)(1) is not warranted in this case. As stated by Judge Fox in this District,

> The following criteria guide the discretionary decision to abstain: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of related non-bankruptcy proceedings; (5) the basis of the bankruptcy court's jurisdiction over the claim; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the claim in bankruptcy court involves forum shopping; (11) the existence of the right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

Best, 417 B.R. at 274, quoting Gilbert v. Ben Franklin Hotel Assocs., Civ. Action No. 95-0311, 1995 WL 598997, at *1 (E.D. Pa. Oct. 10, 1995). This is a flexible test. The relevance and importance of each factor will vary depending on the particular circumstances of the case and no one factor is determinative. Best, 417 B.R. at 274. The decision to abstain under section 1334(c)(1) is left to the discretion of the bankruptcy court. Id.

In this case, a trial had already been held before me and the cause of action arises under the Bankruptcy Code and is not based on a state law cause of action. A decision to abstain would interfere with the efficient administration of the bankruptcy estate and would constitute an inefficient use of judicial resources, both state and federal. It would also cause the parties needless additional time and

expense. I therefore decline to abstain as a discretionary matter under section 1334(c)(1).

## D. The tax upset sale is not avoidable under 11 U.S.C. §548(a)(1)(B)(i) because the price Immanuel paid for the Property constituted reasonably equivalent value.

In BFP v. Resolution Trust Corp., 511 U.S. 531, 545 (1994), the United States Supreme Court held that the "reasonably equivalent value" for foreclosed real property is the price received at a foreclosure sale if the foreclosure sale was conducted in accordance with state law requirements. Debtor argues that the holding of the Supreme Court in BFP should not be extended to tax upset sales because a purchaser at a tax upset sale, unlike a purchaser at a typical foreclosure sale, does not purchase the property free and clear of liens. As a result, Debtor maintains that the difference between the fair market value and the forced sale price will often be greater in a tax upset sale than in a foreclosure sale and that this mandates a conclusion that BFP is inapplicable to tax upset sales. I disagree.

Many courts have addressed whether the Supreme Court's BFP reasonably equivalent value analysis applies in the context of a tax upset sale. The reasoning of the courts that rejected the argument advanced by Debtor is persuasive. Those courts have ruled that the BFP reasonably equivalent value

11

analysis also applies in the context of a tax upset sale. Bankruptcy court decisions that expressly consider BFP as it pertains to tax sales conducted under Pennsylvania's tax sale law include In re Shah, No. 99-34723DWS, 2001 WL 423024, at *10 (Bankr. E.D. Pa. April 10, 2001)(BFP's analysis of reasonably equivalent value applies to claim that tax sale should be avoided under 11 U.S.C. §549(c)); Hemstreet v. Brostmeyer (In re Hemstreet), 258 B.R. 134, 137 (Bankr. W.D. Pa. 2001)(BFP's reasonably equivalent value analysis applies to claim that tax sale should be avoided as a fraudulent transfer under 11 U.S.C. §544 and Pennsylvania Uniform Fraudulent Transfer Act); Golden v. Mercer County Tax Claim Bureau (In re Golden), 190 B.R. 52, 58 (Bankr. W.D. Pa. 1995); and Lord v. Neumann (In re Lord), 179 B.R. 429, 432-36 (Bankr. E.D. Pa. 1995).

Numerous other courts have applied BFP to tax sales in other jurisdictions, including Hollar v. Myers (In re Hollar), 184 B.R. 243, 251-52 (Bankr. M.D.N.C. 1995)(BFP's reasonably equivalent value analysis applies to claim that IRS tax sale should be avoided under section 548(a)); Comis v. Bromka (In re Comis), 181 B.R. 145, 149-50 (Bankr. N.D.N.Y. 1994); McGrath v. Simon (In re McGrath), 170 B.R. 78, 81-2 (Bankr. D.N.J. 1994); and T.F. Stone Companies, Inc. v. Harper (In re T.F. Stone Companies, Inc.), 170 B.R. 884, 890-92 (Bankr. N.D. Tex. 1994)(BFP's analysis of reasonably equivalent value applies to claim that tax sale should be avoided under 11 U.S.C. §549(c)).

I agree with the reasoning of these courts and I therefore conclude that the price obtained at a tax upset sale conducted in compliance with the Pa. Tax Sales Law constitutes reasonably equivalent value for purposes of §548(a)(1)(B)(i). As Judge Sigmund explained in Lord:

> [T]he protections, rights and remedies afforded a delinquent taxpayer under the PA Tax Law are no less than those afforded a mortgagor under Pennsylvania mortgage foreclosure law. Indeed taxpayers receive more and earlier notices prior to the tax sale than mortgagors, and a longer guaranteed period of time within which to cure the default. Each statutory scheme contemplates competitive bidding pursuant to prescribed bidding procedures which are conducted by a government official and neither provides for a period of redemption once the sale is held. The Pa Tax Law affords the taxpayer the three key protections offered by foreclosure laws: notice, ample opportunity to cure, and strict adherence to statutory requirements.

179 B.R. at 435-36. Debtor's argument that the price obtained at a tax upset sale does not constitute reasonably equivalent value because it is likely to be less than the price obtained at a foreclosure sale and less than that obtained in a sale based on an arms-length open market transaction misses the mark. I agree on all points with the New Jersey Bankruptcy Court in McGrath, 170 B.R. at 82, which noted:

> It is troublesome that the sale price will often, if not always, be considerably lower on a tax foreclosure sale than on a mortgage foreclosure, because the amount of taxes due is usually much less than the amount due on a mortgage. This will mean that [the] difference between the fair market value and the forced sale price is going to be greater with a tax foreclosure than with a mortgage foreclosure. BFP makes clear, however, that fair market value is simply not the value in a forced sale context,

13

and this court sees no reason why that is any less true if the forced sale happens to be in a tax foreclosure.

See also Lord, 179 B.R. at 433. For all of these reasons, I conclude that the decision of the Supreme Court in BFP applies with equal force in the context of a tax upset sale.

Having found that BFP applies to a tax upset sale, the question is whether the tax upset sale of Debtor's Property complied with the requirements of the Pa. Tax Law. This is critical because the price obtained at a forced sale is only deemed to constitute "reasonably equivalent value" under BFP if the forced sale was conducted in compliance with the requirements of a state's forced sale law. BFP, 511 U.S. at 545. This task is simplified because I am bound by the state court's February 4, 2014 findings that the tax upset sale of the Property was conducted in compliance with due process and the Pa. Tax Law. The state court's findings must be given collateral estoppel effect.

Under Pennsylvania law, the doctrine of collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue in a subsequent action between the parties when the issue has already been litigated in a prior suit. McGinley v. Haiko (In re McGinley), Adv. No. 01-0878, Case No. 00-17434DWS, 2002 WL 1205033, at *5 (Bankr. E.D. Pa. May 14, 2002). Collateral estoppel, or issue preclusion, applies when the following elements are met:

14

> (1) [T]he issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Schulman v. J.P. Morgan Inv. Mgmt., Inc., 35 F.3d 799, 806 (3d Cir. 1994), quoting Sanders v. Sanders, 558 A.2d 556, 560 (Pa. Super. 1989); Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). The decision in the state court action must be final for collateral estoppel to apply; that the period for taking an appeal from the prior decision had not expired does not affect the finality of the judgment for collateral estoppel purposes under Pennsylvania law. McGinley, 2002 WL 1205033, at *5. In Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996), the Pennsylvania Supreme Court specifically stated that "[a] judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal."

The February 4, 2014 decision of the state court in this case, therefore, is deemed to be final for purposes of collateral estoppel. Each of the other elements for collateral estoppel has been satisfied. The issues decided in the state court action, i.e., that the tax upset sale was conducted in compliance with due process requirements and the Pa. Tax Law, are identical to the issues before me. The party against whom collateral estoppel is asserted, namely Debtor, was a party in the

15

state court action and had a full and fair opportunity to litigate the issue in question. As a result, I am bound by the state court's findings that the tax upset sale of the Property complied with the requirements of due process and the Pa. Tax Law. For all of these reasons, I find that Immanuel paid reasonably equivalent value for the Property at the tax upset sale and the sale is therefore not avoidable under Section 548(a)(1)(B)(i).

### E. **I will grant sua sponte relief from the automatic stay to enable both Debtor and Immanuel to participate, if they so choose, in an appeal of the state court decision, with relief from the automatic stay to take effect on May 23, 2016.**

No request for relief from the automatic stay is contained in Debtor's complaint and no party filed a motion for relief from the automatic stay in the main bankruptcy case. At the conclusion of the trial, however, I requested that the parties address in their briefs whether I should grant sua sponte relief from the automatic stay to allow the parties to participate in an appeal from the state court decision.

A final decision by the state court on the question whether the tax upset sale of the Property complied with due process requirements and the Pa. Tax Law is crucial to the parties' ultimate resolution of the differences between them. For this reason, I find that sua sponte relief from the stay should be granted to enable both Debtor and Immanuel to participate, if they so choose, in an appeal of

16

the state court decision. No appeal of the state court decision is currently pending, and once relief from the stay is granted, only two days will remain before the time for filing an appeal of the state court decision expires. I will therefore make my decision granting sua sponte relief from the automatic stay effective ten days after this Memorandum Opinion and accompanying Order are entered. That will provide the parties time to reflect on the merits of appellate review of the state court decision.

## III. CONCLUSION

Based on the above discussion, I find and conclude: (1) The Rooker-Feldman doctrine does not divest me of jurisdiction over Debtor's effort to set aside the pre-petition tax upset sale of the Property under Section 548(a)(1)(B)(i); (2) Debtor's claim under Section 548(a)(1)(B)(i) is not barred by the doctrine of res judicata; (3) neither mandatory nor discretionary abstention is warranted in this case; (4) the tax upset sale of the Property to Immanuel is not avoidable under Section 548(a)(1)(B)(i) because Immanuel paid what is deemed to be reasonably equivalent value for the Property; and (5) sua sponte relief from the automatic stay shall be granted to allow Debtor and Immanuel to participate, if they so choose, in an appeal of the state court decision, with relief from the automatic stay to take effect ten days after this Memorandum Opinion and accompanying Order are

entered. My order entering judgment on the complaint in favor of Immanuel and against Debtor accompanies this Memorandum Opinion.

BY THE COURT

Date: May 18, 2016

*RICHARD E. FEHLING*
RICHARD E. FEHLING
United States Bankruptcy Judge